**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **MARCIA EASON,** ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| **v.** ) | |
| ) | **Case No.:  4:25-CV-00406-SPM** |
| ) | |
| **COMMERCE BANCSHARES, INC.,** ) | |
| ) | |
| And ) | |
| ) | |
| **COMMERCE BANK, INC.** ) | |
| ) | |
| *Defendants.* ) | |

**AMENDED VERIFIED COMPLAINT FOR VIOLATION OF THE**
**FAMILY & MEDICAL LEAVE ACT**

**COMES NOW** Plaintiff Marcia Eason (hereinafter, "Ms. Eason" or "Plaintiff"), by and through counsel, and for her Amended Complaint against Commerce Bancshares, Inc. and Commerce Bank, Inc. (hereinafter, "Defendants") states and alleges as follows:

**NATURE OF COMPLAINT**

1.      Ms. Eason brings this action under federal law, specifically the Family & Medical Leave Act ("FMLA") 29 U.S.C. § 2601 *et seq*.

2.      Plaintiff brings this action against Defendant for retaliation against the exercise of her rights under the FMLA, 29 U.S.C. § 2601 *et seq*.

3.      Defendants' actions were in direct violation of the FMLA, 29 U.S.C. § 2601 *et seq*.

4.      For said violations, Plaintiff is seeking compensation for unpaid wages, including backpay, liquidated damages, and attorney's fees.

## PARTIES

5.    Plaintiff Marcia Eason is an adult resident of St. Louis, Missouri.

6.    Defendant Commerce Bancshares, Inc. is a Missouri corporation and the corporate parent of Defendant Commerce Bank, with its principal place of business in Kansas City, Missouri, and may be reached for service through its registered agent, Commerce Bank, 1000 Walnut Street, Floor 4, Kansas City, MO 64106.

7.    Defendant Commerce Bank is a Missouri corporation with its principal place of business in Kansas City, Missouri, and may be reached for service through its registered agent, Commerce Bank, 1000 Walnut Street, Floor 4, Kansas City, MO 64106.

## JURISDICTION & VENUE

8.    This Court has original federal jurisdiction pursuant to 28 U.S.C. § 1331 because this case is brought under the FMLA 29 U.S.C. § 2601 *et seq*.

9.    Defendant is a corporation registered in the State of Missouri, with its principal place of business in Missouri, and is subject to service of process in Missouri.  Therefore, this Court has personal jurisdiction over Defendant.

10.    A substantial part of the events giving rise to Ms. Eason's claim occurred in the Eastern Division of the Eastern District of Missouri.  Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action properly lies in this district.

## FACTUAL BACKGROUND

11.    Defendant Commerce Bank is a corporation based in Kansas City, Missouri that provides financial services to customers across the Midwestern region of the United States.

12.    Defendant hired Ms. Eason to work as a Customer Service Representative on or about October 1, 2000.

13.     Throughout her employment, Ms. Eason dutifully completed her tasks and excelled in her work, meeting Defendant's legitimate expectations for her performance.

14.     Ms. Eason has suffered from longtime symptoms of cardiovascular health issues, including but not limited to high blood pressure.

15.     Ms. Eason sought intermittent FMLA leave for the treatment and management of her cardiovascular health issues, beginning in or around 2011, which Defendant approved.

16.     Defendant approved Ms. Eason's intermittent FMLA leave annually.

17.     From 2011 to August 2021, Ms. Eason only used her approved intermittent leave occasionally.

18.     However, in or around August 2021, Ms. Eason suffered from a severe COVID-19 infection, leading to long-term symptoms including but not limited to pneumonia and a pulmonary embolism.

19.     Ms. Eason sought FMLA leave related to the treatment and management of the symptoms from the August 2021 COVID-19 infection, which Defendant approved.

20.     Ms. Eason used approximately four months of FMLA leave relating to the August 2021 COVID-19 infection.

21.     However, even returning from the FMLA leave, Ms. Eason still suffered from the long-term symptoms caused by the infection.

22.     As such, Ms. Eason was forced to use a significant amount of her previously approved intermittent FMLA leave after the infection.

23.     After the August 2021 infection, when Ms. Eason began to use significantly more FMLA leave, Defendant began to take retaliatory and unnecessary disciplinary actions against Ms. Eason.

3

24. After returning from her FMLA leave, Ms. Eason's supervisors began to ruthlessly scrutinize and nitpick Ms. Eason's performance.

25. Moreover, in or around May 2022, Defendant placed Ms. Eason on an unwarranted probationary period, claiming poor performance.

26. Such probationary periods typically last for 90 days according to Defendant's policies and procedures.

27. Ms. Eason completed the 90-day probationary period, with no notification of any extension of the probationary period.

28. On or about July 27, 2022, Ms. Eason suffered a heart attack, forcing her to use one month of FMLA leave.

29. After returning from her FMLA leave, the nitpicking into Ms. Eason's performance continued.

30. Between July 2022 and March 2023, Plaintiff continued to take intermittent leave as needed, and took, according to records, 98.76 hours of intermittent leave.

31. Plaintiff was told to document to this time as FMLA leave.

32. On March 14th, 2023, Defendant notified Ms. Eason that she now had to renew her intermittent FMLA leave every 6 months instead of once per year, as she had done since the initial request for intermittent FMLA leave.

33. Defendant stated that her FMLA leave had not been done properly during her entire time with Defendant, and that she had been "grandfathered in" by letting her renew once per year, but now had to comply with this new, previously unrevealed policy.

4

34.     Plaintiff repeatedly asked Defendant for information substantiating this policy, so that she could attempt to initiate the leave procedures, but never received anything prior to her termination.

35.     Weeks later, on or about March 29, 2023, Defendant terminated Ms. Eason.

36.     When requesting further information regarding her termination, Defendant only stated a breach of policy as the reason for termination.

37.     Ms. Eason later learned that Defendant had kept her on the prior probationary period from May 2022, far exceeding the typical 90-day period for such probationary periods..

### COUNT I – VIOLATION OF THE FMLA- INTERFERENCE

38.     Ms. Eason realleges and incorporates all allegations as if actually set forth herein.

39.     The FMLA defines an "employer" as an entity "engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or proceeding calendar year." 29 U.S.C. § 2611(4)(A)(i).

40.     At all relevant times, Defendant Commerce Bancshares, Inc. employed more than 50 people who provided financial services for customers across the Midwestern region of the United States, thereby engaging in interstate commerce. Defendant also has employees working during the entire year exceeding the 20-calendar-workweek requirement. Defendant is therefore, a "covered employer" pursuant to the FMLA. *See* 29 U.S.C. § 2611(4)(A)(i).

41.     The FMLA defines an "eligible employee" as an employee who has been employed for at least 12 months by the employer, worked at least 1,250 hours in the previous 12 months. 29 U.S.C. § 2611(2).

42.     Ms. Eason had worked as a full-time employee for Defendant for well over 12 months prior to requesting leave in or around 2021.

43.     Ms. Eason exceeded the 1,250-hours worked requirement in the 12 months prior to applying for intermittent FMLA leave in or around 2011 and after requesting FMLA leave in August 2021. Therefore, at all relevant times, Plaintiff was a "covered employee" for purposes of the FMLA.

44.     In addition, Ms. Eason continued working for Defendant on a full-time basis while taking intermittent FMLA leave.

45.     Consequently, Ms. Eason was always eligible to take FMLA leave for her own serious health conditions.

46.     The FMLA entitles an eligible employee to twelve workweeks of unpaid leave within any twelve-month period to deal with "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

47.     When an employee seeks *intermittent* FMLA leave, the employee can use his FMLA-protected leave days nonconsecutively throughout a designated twelve-month period.

48.     Ms. Eason's cardiovascular health issues and long-term symptoms resulting from the August 2021 COVID-19 infection constitute a serious health condition, entitling Ms. Eason to take up to twelve workweeks of intermittent FMLA leave within a twelve-month period.

49.     The FMLA prohibits employers from interfering with, denying, or restraining an employee's exercise of or attempt to exercise their FMLA rights.  *See* 29 U.S.C. § 2615(a)(1); *see also* 29 C.F.R. § 825.220(a)(1).

50.     Accordingly, any FMLA-eligible employee who takes leave that is protected under the statute shall be entitled, on return from such leave, to be restored by the employer to their

6

former position or an equivalent position with the same benefits, pay, and other terms and conditions of employment. *See* 29 U.S.C. § 2614(a); *see also* 29 C.F.R. § 825.214.

51.     Defendant interfered with Ms. Eason's exercise of her rights under the FMLA when, in March 2023, it unilaterally insisted on bi-annual renewals of her intermittent leave, and then consistently refused to allow her to comply with this new policy standard, and thus she was denied a benefit to which she was entitled.

52.     Defendant's decision to discipline and ultimately terminate Ms. Eason constitutes interference with Plaintiff's exercise of her FMLA rights.

53.     Upon information and belief, no other employee who did not take intermittent FMLA leave was treated with equal scrutiny as Plaintiff.

**COUNT II- VIOLATION OF THE FMLA- RETALIATION**

54.  Ms. Eason realleges and incorporates all allegations as if actually set forth herein.

55. Following Ms. Eason returning from FMLA leave in July 2022, she was subjected to constant, continuous harassment and nitpicking of her work to which no other employee was subjected.

56. Additionally, in March 2023, she was told for the first time during her entire period of employment that her leave requests "had always been done wrong" and that she would now have to renew her intermittent FMLA requests bi-annually.

57. Defendant retaliated against Ms. Eason's exercise of her rights under the FMLA when Defendant relentlessly nitpicked her performance, placed her under heavy scrutiny, and issued an unwarranted probationary period beginning in May 2022, directly affecting the terms and conditions of her employment.

58. Defendant retaliated against Ms. Eason's exercise of her rights under the FMLA by

7

terminating her employment with it because she continuously attempted to comply with the new policy standard set forth in March 2023.

59. Defendant retaliation against Ms. Eason's exercise of her FMLA rights culminated in the termination of her employment with Defendant.

60. Moreover, Defendant acted in bad faith by willfully and knowingly violating Plaintiff's FMLA rights by disciplining her for taking FMLA leave, including unilaterally extending Ms. Eason's probationary period well beyond 90 days without informing Ms. Eason of such extension.

## PRAYER FOR RELIEF

**WHEREFORE**, Ms. Eason prays as follows:

1.      A declaratory judgment that the practices complained of herein were unlawful under the FMLA.

2.      An award of money damages for unpaid wages, including back pay and liquidated damages in an amount to be determined at trial, compensatory damages, attorney's fees, and any and all such legal and equitable relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to a jury trial.

Dated: June 16th, 2024                                    Respectfully submitted,

s/Alan G. Crone_____
By: Alan G. Crone (MO 73285)
Alex Gass (MO 72810)
The Crone Law Firm, PLC
3115 S Grand Blvd 5th Floor
St. Louis, MO 63118
(901) 258-4711
(314) 208-3856

8

acrone@cronelawfirmplc.com
agass@cronelawfirmplc.com

*Attorney for Plaintiff*

## DECLARATION & VERIFICATION

I, Marcia Eason, verify and declare that the facts stated in the foregoing Verified Complaint for violations of the Family and Medical Leave Act are true to the best of my knowledge and belief, and that the Complaint was not made out of levity or by collusion with Defendant but in sincerity and truth for the causes mentioned in the Complaint.

_____
Marcia Eason

06 / 13 / 2025
_____
Date

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| Title | Marcia Eason - Amended Complaint |
| File name | Amended_Eason_Complaint_6.11.25.pdf |
| Document ID | faa284a1fd70e24f1292330423663ac4d9d3f34b |
| Audit trail date format | MM / DD / YYYY |
| Status | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | **06 / 13 / 2025** 16:35:37 UTC-5 | Sent for signature to Marcia Eason (easonmarcia143@gmail.com) from jlc@cronelawfirmplc.com IP: 173.166.195.225 |
| **VIEWED** | **06 / 13 / 2025** 16:41:17 UTC-5 | Viewed by Marcia Eason (easonmarcia143@gmail.com) IP: 174.210.5.80 |
| **SIGNED** | **06 / 13 / 2025** 16:41:55 UTC-5 | Signed by Marcia Eason (easonmarcia143@gmail.com) IP: 174.210.5.80 |
| **COMPLETED** | **06 / 13 / 2025** 16:41:55 UTC-5 | The document has been completed. |